704 S.W.2d 512 (1986)
Luis GARCIA a/k/a Obed Jesus Giraldo, Appellant,
v.
The STATE of Texas, Appellee.
No. C14-84-737-CR.
Court of Appeals of Texas, Houston (14th Dist.).
January 23, 1986.
*513 C. Anthony Friloux, Jr., Houston, for appellant.
John B. Holmes, Jr., Dist. Atty., Winston Cochran, Jr., Brad Beers, Asst. Dist. Attys., Houston, for appellee.
Before JUNELL, ROBERTSON and CANNON, JJ.

OPINION
JUNELL, Justice.
Appellant was indicted on the felony charge of possession of a controlled substance with intent to deliver after being caught at Houston Intercontinental Airport in possession of a suitcase containing almost 1000 grams of cocaine. He sought and was granted an extensive hearing on his motion to suppress evidence acquired by police officers at the airport. After the trial court denied his motion to suppress, appellant waived a jury trial, pled not guilty and entered into a written stipulation of evidence. The court found him guilty as charged and assessed punishment at 25 years' confinement and a $10,000 fine. In a single ground of error appellant asserts that the trial court erred in overruling the motion to suppress. We affirm.
We first address a procedural issue raised by the state. The state contends that appellant has waived error by (1) consenting *514 to the admission of the evidence he originally sought to suppress and (2) failing to provide a complete record. The written stipulation included in the transcript states in part:
I consent to the oral stipulation of evidence and to the introduction of affidavits, written statements of witnesses and other documentary evidence, including copies of transcripts of prior testimony. I waive my right against self incrimination and stipulate the following facts ...
The rest of the stipulation sets out that a chemist would have testified to analyzing the substance seized and determining that it contained approximately 998.4 grams of 94 percent pure cocaine.
A transcript of the hearing on the motion to suppress is in the appellate record. The clerk's notations indicate that it was filed before the trial court made its ruling on the motion to suppress and then also marked as an exhibit on the date the appellant was found guilty by the trial court. The appellant did not request a statement of facts covering the trial before the court and none is in the record. The state contends that without a statement of facts of the trial the record fails to show that the court relied on the arguably suppressible evidence and nothing is left for review. The state cites no authority for its two-pronged waiver argument.
In a very similar situation, the San Antonio court of appeals held that the defendant waived review of suppression hearing issues by stipulating to testimony in a trial before the court on a not guilty plea. Batts v. State, 673 S.W.2d 666 (Tex.App.San Antonio 1984, no pet.). The charge was armed robbery. At the suppression hearing Batts apparently argued that the in-court identification of a key witness was inadmissible because (1) overly suggestive pre-trial identification procedures occurred and would taint any identification at trial and (2) the identification evidence flowed from an arrest made without probable cause and was a result of an unreasonable search and seizure. The court of appeals held that by entering into stipulated evidence essentially identical to the testimony at the suppression hearing Batts expressly waived any reliance upon the ruling on the motion to suppress. 673 S.W.2d at 668. The appellant before us stipulated to the exact same testimony testified to at the hearing by agreeing to admission of the transcripts of prior testimony as evidence.
The San Antonio court cites as its only authority McGrew v. State, 523 S.W.2d 679, 681 (Tex.Crim.App.1975). In McGrew the defendant waived review of an admissibility issue because, after losing in the suppression hearing, the defense counsel at a jury trial expressly stated "no objection" when the state offered the same evidence. See also Gearing v. State, 685 S.W.2d 326, 329 (Tex.Crim.App.1985) (en banc). McGrew and Gearing state an exception to the rule that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial to preserve error. Riojas v. State, 530 S.W.2d 298, 301 (Tex.Crim.App.1975). In relying upon McGrew the San Antonio court equates entering into a stipulation of evidence with affirmatively asserting no objection to the admission of the complained of evidence.
This is a harsh result when considering that stipulating to evidence is a concession a defendant makes to save the court's time and avoid calling back witnesses already heard at a suppression hearing. We also note that at the time the appellant chose to plead not guilty but stipulate to evidence it was still a very perilous procedure to plead guilty or nolo contendere and preserve error by means of article 44.02. Tex.Code Crim.Proc.Ann. art. 44.02 (Vernon 1979). This court had even recommended a guilty plea procedure in Zappas v. State, 650 S.W.2d 131 (Tex.App.Houston [14th Dist.] 1983), rev'd in unpublished opinion. The court of criminal appeals has now adopted a more lenient rule so that defendants pleading guilty should no longer have to worry about inadvertently waiving appeal. Morgan v. State, 688 S.W.2d 504 (Tex.Crim.App.1985) (en banc).
*515 We decline to accept the state's waiver arguments. Even without a statement of facts of the actual trial before the court a complete record of all facts pertaining to the alleged error is found in the transcription of the suppression hearing. See Beck v. State, 651 S.W.2d 827, 828 (Tex.App.Houston [1st Dist.] 1983, no pet.).

MERITS OF APPEAL
Appellant's only ground of error is that the trial court should have granted his motion to suppress evidence. The motion requested that several things be suppressed, including a suitcase and its contents, airline tickets, keys and all conversations between the police officers involved and appellant. His brief on appeal does not treat each item separately. Obviously the most damaging evidence was the cocaine found in the suitcase. We will follow the state's approach and consider the admissibility of each of the items mentioned in the suppression motion.
On the day of the arrest Houston police officer M.L. Gann was at the Eastern Airlines baggage pick-up area at Houston Intercontinental Airport to observe a narcotics suspect who had arrived on a flight from Miami. Baggage from a flight from Newark was also being distributed in the area. Gann stood next to a man, subsequently identified as Evencio Garzon, who kept stopping bags on the carousel to compare their tags to a claim ticket he possessed. Garzon's actions seemed peculiar to Gann because he was checking every medium-sized hard suitcase without regard to color. Gann also noticed appellant, who was standing on the opposite side of the baggage carousel watching Garzon. Eventually appellant, carrying a medium-sized suitcase, came over and touched Garzon on the shoulder. The two conversed in Spanish and then passed through the baggage security check point together. Testimony was inconsistent about who carried the bag at specific times, but it is clear that both Garzon and appellant carried the bag at some point between the carousel and the taxicab stand.
Officer Gann was working with another Houston police officer, Tommy Hoffpauir, and Drug Enforcement Administration agent Michael Stattlander. Gann and Hoffpauir decided to approach the two men at the taxi stand. Garzon was at the back of a cab placing the suitcase in the trunk. Appellant was standing beside the cab. Officer Hoffpauir approached Garzon, showed him his police identification and asked Garzon if he would mind speaking to him for a moment. Garzon's only response was to put up his hands and say "I know nothing."
Appellant at this time began to quickly walk away from the taxi back toward the terminal building. DEA agent Stattlander testified that he approached appellant, showed him his DEA identification and "explained to the defendant that we would like to speak to him, `And if you would please accompany me' back over to where his other companion was standing by the taxicab." Appellant was "cooperative" and walked back to the taxicab. Because he perceived there was a language barrier, agent Stattlander touched appellant's arm as a gesture to show him where he wanted to go.
Once back at the taxicab, Officer Gann spoke with appellant. He first asked for and got consent to talk with appellant. Gann asked appellant if he had just arrived by flight. Appellant shook his head yes. Gann showed him his identification, told him he was a police officer and asked if appellant had any identification. Appellant started patting his pockets and said "no." Gann asked to see appellant's airline ticket. Appellant handed him two tickets, one under the name of Luis Garcia and one under Jairo Giraldo Marin. Gann then asked, "Which one are you?" Appellant said, "I'm Luis Garcia." Gann again asked for identification and was told appellant had none. Gann testified that he returned the tickets to appellant. Then Gann asked if the luggage in the trunk of the taxicab belonged to appellant. Appellant said the suitcase was not his. Gann then requested *516 appellant to ask Garzon if it were his suitcase. Appellant spoke to Garzon in Spanish and then told Gann, "No, it's not his."
Officer Gann asked for an explanation as to why the two were in possession of a suitcase neither owned. Appellant answered only that somebody had a claim ticket for that suitcase. Then Officer Gann asked the two if they would come to the police office at the airport. The two followed the officers while Gann carried the suitcase he had retrieved from the taxicab trunk. At this point Gann felt that the suspects were not free to leave because of the unexplained possession of the suitcase. In the police office, upstairs in the same terminal building, Gann asked again for identification. He then asked appellant if he could search him. Appellant stood up and held his hands out. Gann pulled a ring of keys from an outside jacket pocket. He used a Samsonite key to open the suitcase. The suspects were placed under formal arrest. A spanish-speaking officer arrived and gave them Miranda warnings in Spanish.
The record does not include a court's order denying the motion to suppress or findings of fact and conclusions of law. The main thrust of the state's argument at trial and on appeal is that appellant can claim no fourth amendment protection from search of the suitcase because he had abandoned it.
Warrantless seizure of abandoned property does not violate the fourth amendment. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. United States v. Diggs, 649 F.2d 731, 735 (9th Cir.), cert. denied, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). This determination is to be made by applying objective standards. United States v. Kendall, 655 F.2d 199, 201 (9th Cir.1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An individual cannot usually assert that he exhibited an expectation of privacy in an item when he specifically disclaimed ownership of that same item. United States v. Tolbert, 692 F.2d 1041, 1045 (6th Cir.1982), cert. denied, 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983); United States v. Berd, 634 F.2d 979 (5th Cir.1981); United States v. Canady, 615 F.2d 694 (5th Cir.), cert. denied, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980). The record clearly supports a conclusion that appellant abandoned the suitcase and can claim no expectation of privacy in it.
However, an unconstitutional seizure or arrest that prompts a disclaimer of property vitiates that act and the state cannot rely upon the abandonment as authority to conduct a warrantless search. United States v. Morin, 665 F.2d 765, 770 (5th Cir.1982); United States v. Beck, 602 F.2d 726, 729 (5th Cir.1979). If the abandonment came before any seizure of the person occurred, or a detention was constitutionally made, then it cannot be said that improper police conduct precipitated the disclaimer. United States v. Tolbert, 692 F.2d at 1048; United States v. Anderson, 663 F.2d 934 (9th Cir.1982); United States v. Berd, 634 F.2d at 987.
Appellant argues that he was seized or under an illegal detention at the moment that agent Stattlander approached him and asked him to return to the taxicab. We hold that Stattlander's actions did not amount to a seizure, but fall within the category of mere police-citizen communication that involved no coercion or detention. Such a contact does not violate the fourth amendment. See Daniels v. State, 681 S.W.2d 78 (Tex.App.Houston [14th Dist.] 1984, pet. pending); United States v. Berry, 670 F.2d 583 (5th Cir.1982). The fact that Stattlander touched appellant's arm to help communicate where he was heading does not amount to physical restraint. Cf. United States v. Collis, 699 F.2d 832, 835 (6th Cir.), cert. denied, 462 U.S. 1119, 103 S.Ct. 3088, 77 L.Ed.2d 1349 (1983). Exhibiting police identification and asking if the suspect would mind answering a few questions, as officer Gann did, also does not invoke the protections of the fourth amendment. *517 United States v. Elmore, 595 F.2d 1036, 1042 (5th Cir.1979).
One of the few questions asked by Gann was whether the suitcase belonged to the appellant. The appellant disclaimed ownership before he was seized. The situation is very close to the facts in United States v. Berd, 634 F.2d 979 (5th Cir.1981), and we agree with the reasoning in that case.
Because the suitcase was abandoned before appellant was detained, the officers were free to open it without a warrant or consent. The contents of the suitcase were of course abandoned at the same time. The court did not err in allowing the cocaine admitted into evidence.
Appellant also contests the admissibility of airline tickets taken from him. Officer Gann testified that he returned the tickets to appellant after looking at them at the taxicab. Appellant denied this, but the court was free to believe the officer. We assume the tickets were later seized in the search incident to arrest. After discovery of the cocaine the officers obviously had probable cause to arrest.
The keys taken from appellant present another issue. It appears from the record that the trial court could have found that appellant consented to the search through his actions. At the time of the consent appellant was legally under a brief Terry detention prompted by the articulable suspicion aroused by Garzon's actions at the baggage carousel and by the fact that two men were in possession of a suitcase that neither man owned or claimed. See United States v. Berd, 634 F.2d at 986 (the obvious attempt by the suspect to disassociate himself from his fellow traveler and from a briefcase he had been carrying provided a "quantum leap" to the articulable facts known by the investigating agent). Whatever the reasoning used by the trial court, we cannot see how admission of the keys could be reversible error once the cocaine itself was admissible.
Finally, the appellant sought to have all conversations with the police officers suppressed, apparently on the theory that appellant was not given a Miranda warning the moment he was approached by agent Stattlander. There is no requirement that officers give Miranda warnings prior to questioning citizens during a justified investigative stop or during questioning that does not amount to detention. United States v. Collom, 614 F.2d 624, 628 (9th Cir.1979), cert. denied, 446 U.S. 923, 100 S.Ct. 1862, 64 L.Ed.2d 278 (1980); Lopez v. State, 681 S.W.2d 788, 791 (Tex.App.Houston [14th Dist.] 1984, no pet.).
Appellant's ground of error is overruled. The conviction is affirmed.
ROBERTSON, Justice, concurring and dissenting.
The issue which causes me to write this separate opinion is whether the record before us is sufficient to authorize us to address the legality of the search issue. If the record is sufficient, I wholeheartedly agree with Judge Junell's well-written opinion.
However, I believe the state's challenge to our consideration of the issue is good for the reason that appellant has not presented us with a complete record. As stated by the majority opinion, the record does not contain a copy of the statement of facts covering the trial before the court. If the written stipulation of evidence contained sufficient recitals for us to know exactly what the court had before it, I would agree there would not be a need for there to be a "statement of facts" prepared by the court reporter. However, such, in my opinion, is not the case. Appellant personally signed the written "Stipulation of Evidence" which recited:
I consent to the oral stipulation of evidence and to the introduction of affidavits, written statements of witnesses and other documentary evidence, including copies of transcripts of prior testimony. I waive my right against self incrimination and stipulate the following facts ...
Such "Stipulation of Evidence" bears markings which would indicate it may have been *518 introduced in evidence, but, from the record, we do not know that. There appears in the court transcript a photocopy of the court reporter's transcription of the evidence heard on the motion to suppress which transcript bears markings which would indicate it may have been introduced in evidence. However, the transcript is not attached to the stipulation of evidence, nor do we otherwise know it was introduced as evidence. From the court's docket sheet, we know there was a habeas corpus proceeding in which bond was lowered and that there was an examining trial held. We do not know from this record whether there was a "transcript" of evidence from these hearings which was before the court. In short, I am of the opinion appellant has not presented us with a record sufficient for us to address his contention. I believe that by addressing appellant's search issue without a proper record we are, in effect, authorizing an appeal from the denial of his motion to suppress. This, of course, is not authorized.