William David ROGAS, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–85–957CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 29, 1987.

Rehearing Denied Feb. 26, 1987.

George W. Dana, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Eleanor McCarthy, Asst. Dist. Atty., Houston, for appellee.

Before JUNELL, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, William David Rogas, appeals from a judgment of conviction for the offense of possession of a controlled substance (at least 400 grams of cocaine) with intent to deliver. Appellant entered a plea of not guilty. The jury found appellant guilty and the court assessed punishment at twenty-five (25) years confinement in the Texas Department of Corrections plus a fine of one hundred dollars ($100.00). We affirm.

Appellant presents three points of error, asserting the trial court erred: (1) in overruling appellant's objections to the prosecutor's comments on appellant's failure to testify; (2) in admitting testimony of the police chemist when a chain of custody had not been sufficiently established; and (3) in overruling appellant's motion to suppress evidence.

At about 9:00 a.m. on March 6, 1985, police officers Stewart, Burnias and Hoffpauir of the Narcotics Division airport detail were routinely monitoring the arrival of a flight from Fort Lauderdale, Florida, a narcotics source city, to Houston Intercontinental Airport. Stewart testified his attention was drawn to a man walking rapidly from Gate 33 toward the baggage area.

The man appeared very nervous, repeatedly looking around and over his shoulder. Determining that he fit the drug courier profile, Stewart informed the other two officers he intended to place the suspect under surveillance.

Burnias testified he followed the suspect into the men's room; he then found him again at the baggage area. Stewart was already at the baggage claim area, observing the man as he sat on a carousel for approximately fifteen minutes. He appeared nervous, watching the people around him and in the area. When the luggage arrived on another carousel, the suspect retrieved a medium brown hard suitcase, examined it, and headed toward the exit doors. Stewart signalled to Burnias, who approached the man.

All officers were in plain clothes and did not have their guns drawn or visible. Burnias testified he asked to speak to the suspect, who agreed. He then advised him he was a police officer, exhibited his police I.D. card, and asked a second time to speak to him, to which the man again consented. Burnias stressed that he did not force him to stop. The officer asked several questions about the man's arrival in Houston. He hesitantly stated he had just arrived from Fort Lauderdale, and produced a ticket in the name of B. Johnson, which matched the name on his luggage.

The suspect's identification, a Texas driver's license, was in the name of appellant, William David Rogas; the photo matched appellant's description. When Burnias asked why the names on his identification and ticket differed, appellant responded that a person he didn't know had purchased the ticket.

In response to Burnias' question, he stated the suitcase was his and gave Burnias permission to open it. The officer then twice advised appellant he had a right to refuse to allow them to open his suitcase. Burnias testified appellant acted very nervous throughout, stuttering, visibly shaking, and constantly looking around.

Appellant, Stewart, and Burnias moved several feet away from passenger traffic. Stewart was able to open the two unlocked

side latches of the suitcase, but the middle combination was locked. Appellant told Stewart he did not know the combination. Burnias then received appellant's permission to telephone his supervisor to arrange for a U.S. Customs narcotic detection dog.

Burnias informed appellant that a dog was due to arrive and that he was "free to do whatever he wanted." Appellant then stated the suitcase was not his, he did not know its owner, and he wished to leave. Burnias told appellant he was free to leave at any time; however, if he left, the police would treat the suitcase as abandoned, since appellant had said it was not his. Appellant reiterated that he did not own the bag. He exited the terminal after Burnias noted some information from his driver's license. Burnias proceeded to follow appellant. Stewart opened the suitcase, finding a cigar box containing a large quantity of white powder that he determined to be cocaine. Burnias and Hoffpauir then arrested appellant as he walked outside the airport building.

At trial, a police chemist testified the substance in the suitcase was in fact 745.3 grams of cocaine with a purity of 84.3%. A latent print examiner testified he found a print matching appellant's right ring finger on the outer bag containing the contraband.

In his first point of error, appellant contends the trial court erred by overruling his objections to portions of the prosecutor's closing argument, which constituted impermissible comments on appellant's failure to testify. Appellant complains specifically of the following two (underlined) comments made by the prosecutor:

(1) PROSECUTOR: Mr. Dana's [defense counsel's] argument is asking you ... to suppose ... to guess ... to try to look in the mind of the defendant and try and decide what he must have been thinking ... and under the law and the instructions and your oath you can't do it. You can only consider the evidence you heard from this witness stand from Officer Burnias, Stewart, Hoffpauir, Fuehner and Stairhime and Forjohn; that's it. And consider this physical evidence sitting on this table. That's all you can consider. *And remember that there was absolutely nothing put before you to show you any evidence, any testimony to show you why you should not believe everything that Officer Stewart and Officer Burnias told you.* (emphasis added).

DEFENSE COUNSEL: I object. This is bordering on the direct comment about the defendant's failure to testify and I object to it.

THE COURT: Be overruled.

PROSECUTOR: I'm just saying there's no cross-examination, nothing to show why that these officers may be telling you a lie. I mean, the only evidence before you is their testimony and that's what you have to base your decision on.

(2) PROSECUTOR: Well, did he voluntarily abandon it? Well, I don't agree when Mr. Dana says it is a fair interpretation of the facts that there was no dog come in and Officer Burnias was going to coerce the defendant into abandoning the bag. Sergeant Fuehner told you he gets calls all the time to call dogs. Sometime they're available and sometimes they're not. He doesn't remember calling on March 6th, 1985, six, seven months ago. Doesn't mean Officer Burnias was lying to you. I mean, that's what you would have to find is Officer Burnias told you just as clear as can be, "I called Sergeant Fuehner; I asked him to see if he could get a dog."

*So to not believe that you have to find Officer Burnias lied to you, committed perjury on the stand and again you've heard—you heard no evidence to tell you—to indicate that you ought to disbelieve Officer Burnias or Officer Stewart.* (emphasis added).

DEFENSE COUNSEL: Your Honor, again that's a direct comment on the failure of this defendant to testify.

THE COURT: Be overruled.

PROSECUTOR: By the defense questioning of him there's no indication of why you should disbelieve them.

■ Comment by the prosecutor on a defendant's failure to testify violates both the constitutional right against self-incrimination and the Texas statutory prohibition. U.S. Const. amend. 5; Tex.Const. art. I, § 10; Tex.Code Crim.Proc.Ann. art. 38.08 (Vernon 1979). In order to determine that the State's argument constitutes improper comment on appellant's failure to testify, we must view the statements from the standpoint of the jury and conclude the following: that the language used by the prosecutor was either manifestly intended to be such a comment or is such that a jury would naturally and necessarily take it as a comment on appellant's failure to testify. *Paster v. State,* 701 S.W.2d 843, 849 (Tex. Crim.App.1985); *Henson v. State,* 683 S.W.2d 702, 704 (Tex.Crim.App.1984); *Short v. State,* 671 S.W.2d 888, 890 (Tex. Crim.App.1984).

■ The record is clear that the prosecutor's statements were not direct comments on appellant's failure to testify nor manifestly intended to be such comments. Furthermore, the statements were not of such character that the jury would "naturally and necessarily" take them as comments on appellant's failure to testify.

Since the statements constituted indirect comments, error is not reversible unless the remarks called for denial of an assertion of fact or for contradictory evidence that only the defendant was in a position to offer. *Henson v. State,* 683 S.W.2d at 704–705. The statements of which appellant complains called for neither of these and thus do not require reversal.

Rather, the remarks focused the jury's attention on the fact that there was no reason to believe the police officers were lying ("I'm just saying there's ... nothing to show why these officers may be telling you a lie"; "By the defense questioning ... there's no indication of why you should disbelieve them."). Taken in context, the remarks were both a summarization of the evidence and a response to the remarks of appellant's counsel. As such, the two

statements fell squarely within the parameters of proper jury argument. *Todd v. State,* 598 S.W.2d 286, 296–297 (Tex.Crim. App.1980). We overrule appellant's first point of error.

■ In appellant's second point of error, he alleges the trial court erred in overruling his objection to the admission of the contraband (State's Exhibit 9), due to the lack of a sufficient chain of custody. We find no merit in appellant's argument; the facts are clear from the record that the State sufficiently established a chain of custody.

Officer Stewart testified he found a black metal briefcase in the suitcase he opened. Inside the briefcase was a cigar-type box with the contraband contained within two layers of plastic bags (Exhibits 7 and 8). He identified the initials on Exhibits 7 and 8 as his own. Stewart also testified he relinquished custody of Exhibits 7 and 8 to Officer Stairhime, a latent fingerprint examiner. He was present when Stairhime removed the substance into another plastic bag, Exhibit 9, in order to dust the original bags for fingerprints.

Sergeant Fuehner, Stewart's supervisor, testified he and Stewart transported the bags containing the substance to the fingerprint bureau, where he observed Stewart turn them over to Stairhime, the print examiner. He also stated he saw Stairhime remove the white powder and place it in another plastic bag, Exhibit 9. He subsequently retrieved the evidence and deposited it in the crime lab lock box for chemical analysis. Fuehner identified Exhibits 6 through 10 as items he retrieved from Stairhime. On cross-examination, however, Fuehner was unable to specifically swear that he recognized Exhibit 9 as containing the identical substance.

Officer Stairhime testified he received two plastic bags, containing a white powder within the inner bag, from Stewart. From his initials and lab number he identified Exhibits 7 and 8 as the plastic bags Stewart handed him, and Exhibit 9 as the bag into which the contents of the original bags had been transferred. Stairhime tes-

tified he transferred the evidence to Fuehner.

The chemist, Henry Forjohn, testified he received a plastic bag (Exhibit 6) containing Exhibits 7, 8, and 9 from the narcotics lock box to which only chemists had access. He identified his lab number and initials on the four exhibits.

Although appellant argues the lack of a sufficient chain of custody, the record shows no evidence of tampering or unexplained intermediate deliveries. The testimony of Stewart, Stairhime, and Forjohn describes a continuous chain of custody of the evidence. Fuehner's inability to specifically identify Exhibit 9 does not contradict the testimony of the remaining three witnesses. Since the chain of custody was sufficiently established for admissibility, the trial court properly overruled appellant's objection. Appellant's second point of error is overruled.

In appellant's final point of error, he contends the trial court erred in overruling the motion to suppress evidence, because the contraband was obtained as a result of an illegal search and seizure. Appellant maintains he was in illegal custody; thus the search of his luggage was illegal and the evidence should have been suppressed.

The record before us contradicts appellant's assertions. Officers Burnias and Stewart were in plain clothes and displayed no weapons when they initially approached appellant. Appellant consented to speak to them, and agreed again after seeing their police identification. The officers made no demands of appellant, but merely asked if they might see his ticket and identification. Appellant acceded to their request. Burnias' testimony shows appellant understood he could refuse the search of his suitcase when asked:

> After I asked him if I could get his permission to look inside the suitcase, he answered in the positive. And then I advised him that he had the right to refuse officers to go into his suitcase. And, in fact, I said it twice to him ... I asked if we could move a little bit out of the way, ... which he did ... [by] pick[ing] up his own bag and mov[ing]

over.... And then I asked him a second time if we could go ahead and look inside the suitcase. He said yes.

Since Stewart could not open the suitcase, appellant gave permission as well to the summoning of a narcotic detection dog. The record is clear that appellant was never in custody; he was free to leave, and did in fact do so:

A. I [Burnias] then advised Mr. Rogas before we went into the bag or before the dog got there that he was free to do whatever he would like.

Q. [D]id that include telling him he was free to leave?

A. Yes, sir, I told him he was free to do whatever he wanted ... [H]e [then] said that the bag was not his.

\*   \*   \*   \*   \*   \*

A. [H]e said he wanted to leave.

Q. When the defendant told you that the bag wasn't his, what did you tell him?

A. I asked if he was abandoning the suitcase and he said he did not know the owner of the bag and the bag was not his.

\*   \*   \*   \*   \*   \*

A. I told him he was free to leave....

\*   \*   \*   \*   \*   \*

Q. And what did the defendant do at that time?

A. At that time Mr. Rogas walked out of the terminal and abandoned the suitcase ... [He] walked out of the terminal to the south [taxicab] side of the terminal.

■ The airport encounter between appellant and the police amounted to neither a seizure to be supported by reasonable suspicion nor an arrest to be supported by probable cause. The record reinforces the fact that it was merely police-citizen communication involving no coercion or detention. *United States v. Berry*, 670 F.2d 583 (5th Cir.1982), cited in *Perchitti v. State*, 659 S.W.2d 75, 77 (Tex.App.—Houston [14th] 1983, no pet.). That no detention or coercion occurred is evidenced by the numerous instances in the record of appel-

lant's voluntary responses, and by the fact that appellant felt free to end the conversation and leave. Indeed, he did exit the terminal and was apparently in the process of leaving by taxi when the police arrested him.

 The evidence also indicates appellant voluntarily abandoned the suitcase before leaving the terminal. He can thus claim no fourth amendment protection from its search; he repeatedly stated the bag was not his and he did not know who owned it. We hold appellant has forfeited any reasonable expectation of privacy in the suitcase or its contents, since he specifically disclaimed ownership and abandoned it. *Garcia v. State*, 704 S.W.2d 512, 516 (Tex.App.—Houston [14th Dist.] 1986, pet. pending); *Hurtado v. State*, 722 S.W.2d 184, 187 (Tex.App.—Houston [14th Dist.] 1986, pet. pending).

Appellant cites this court's decision in *Perchitti v. State* as controlling. However, reliance on *Perchitti* is misplaced; the facts in that case are easily distinguishable from those before us. Perchitti gave police his correct name, and his airline ticket was in the same name; he proved the legitimacy of his trip from Miami to Houston; he was never informed he was free to leave or to object to a search; and he did not consent to the search. Although the evidence should have been suppressed in *Perchitti,* the contraband was properly admitted in appellant's case. We therefore overrule appellant's third point of error.

The judgment of the trial court is affirmed.