**Thomas Edgar DANIELS aka Thomas Edgar Austin, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. C14–83–093–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 26, 1984.

Rehearing Denied Feb. 23, 1984.

Discretionary Review Granted Nov. 14, 1984.

Ronald Waska, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Thomas Edgar Daniels appeals from his conviction for possession of a controlled substance for which he was sentenced to five years' imprisonment. In two grounds of error, appellant claims that the trial court incorrectly admitted into evidence certain items seized from him during an airport stop and search. We hold that the trial court did not err in admitting such evidence and accordingly affirm the judgment.

Officers Furstenfeld and Bernias, while on Airport Detail for the Houston Police Department's Narcotics Division, observed appellant and his co-defendant, Stephen Bogden, arriving at Houston Intercontinental Airport from Miami. The officers were looking for people who displayed certain characteristics typical of drug couriers. They were particularly interested in this flight as it originated in Miami, a known drug source city. Furstenfeld's attention was immediately drawn to appellant Daniels because he and Bogden deplaned separately, but obviously "locked eyes" in the lobby. Daniels scanned the lobby nervously, and then he and Bogden proceeded separately down the concourse. They nodded at each other once, and both appeared unusually nervous. They met at the baggage claim area where Bogden handed appellant his suitbag while Bogden went to the restroom. Bogden rejoined Daniels and they waited to claim a white suitcase. The officers then followed Daniels and Bogden into the elevators which took them to the airport's covered parking area. Furstenfeld approached appellant Daniels as he left the elevator and began walking down the parking lot, while Bernias followed Bogden further down the lot. Furstenfeld greeted appellant and asked if he could speak with him. He then identified himself as a police officer and asked if Daniels would mind answering a few questions for an investigation he was conducting. Daniels replied that he did not mind. Furstenfeld asked him if he was traveling with Bogden, to which he responded that he was not. Furstenfeld then asked if he would mind showing his plane ticket. Appellant produced two tickets, one in the name of G. Daniels and one in Bogden's name. Furstenfeld then returned the tickets and asked him for some identification. Daniels handed him a temporary driver's license in the name of T. Daniels. After looking at it, Furstenfeld returned the license and identified himself as a narcotics officer. Appellant then became nervous and began shaking and perspiring.

Furstenfeld then asked for Daniels's permission to search him and his suitcase. He informed Daniels that he did not have to consent and that he could require him to obtain a search warrant. In spite of this admonition, Daniels consented to the search, which subsequently revealed certain controlled substances. Daniels was then arrested and charged with the instant offense.

Before the case went to trial on the merits, Daniels made a motion to suppress the introduction of the narcotics. The trial judge denied the motion after a lengthy hearing. Daniels was thereafter found guilty of possession of a controlled substance. He now contends on appeal that the narcotics were obtained as the result of an illegal search and seizure, and therefore should have been excluded.

There have been a myriad cases dealing with airport stops and searches. The courts have had difficulty with these issues and have reached varying results. This diversity stems from the constitutional need to balance the intrusion on an individual's Fourth Amendment rights against the government's interest in ending drug smuggling. *See United States v. Berry,* 670 F.2d 583, 594 (5th Cir.1982) (en banc). However, two recent cases have attempted to resolve these uncertainties and establish specific guidelines for future airport stop and search cases. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Berry, supra.*

■■■ We begin with the premise that not all airport stops of individuals by police

invoke the protections of the Fourth Amendment. Rather, the purview of protections is governed by which one of three types of police-citizen encounter is at issue: a communication between police and citizens involving no coercion or detention, a brief, *Terry*-type investigatory stop, or a full scale arrest. *Berry*, 670 F.2d 591. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Perchitti v. State*, 659 S.W.2d 75 (Tex.App.—Houston [14th Dist.] 1983, no pet.). If the events in the case constitute a permissible police encounter in a public place or a justifiable *Terry* type detention, evidence obtained in a subsequent voluntary search is admissible. *See Royer*, 103 S.Ct. at 1326. If, however, the stop amounts to a full scale arrest, it must be supported by probable cause for the evidence gained thereby to be admissible. Thus, our initial task is to determine the proper category here involved.

■ Communications between police and citizens involving no coercion or detention do not violate the Fourth Amendment. *Berry* at 594. Police officers may approach an individual in a public place by asking him if he is willing to answer some questions, or by putting questions to him if he is willing to listen. Without more, the fact that an officer identifies himself as a police officer does not make the encounter a seizure requiring some amount of justification. Simply stated, if there is no detention—no Fourth Amendment "seizure"—then no constitutional rights have been violated. *Florida v. Royer*, 103 S.Ct. at 1324.

■ A "seizure" of a person has occurred if "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). When a seizure takes place, it must be justified in some manner for the fruits thereof to be admissible evidence. However, not all seizures must be supported by probable cause to arrest. Rather, a reasonable suspicion of criminal activity justifies a temporary seizure for the purpose of questioning, directly limited to the purpose of the stop. *Royer*, 103 S.Ct. at 1324; *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

With these guidelines in mind, we now apply them to our facts. Officer Furstenfeld observed certain characteristics in Daniels which drew his attention to him. He then approached Daniels and asked him whether he would answer some questions. He identified himself as a police officer, asked for, and examined appellant's airline tickets and driver's license. Up until this point, Furstenfeld was engaged in a permissible encounter in a public place. *See Royer*, 103 S.Ct. at 1326.

■ After he examined the tickets, Furstenfeld learned without coercion that appellant was lying about his having travelled with his codefendant, Bogden. This added circumstance gave him "reasonable suspicion" and, thus, adequate grounds to detain him in order to dispel his suspicions. *Id.* He did so and, as stated, if the events in a particular case amount to no more than a permissible police encounter or a reasonable suspicion encounter, appellant's voluntary consent would legalize the search of his suitcase.

■ Since we have determined that the stop did not exceed these limits, we must now determine whether Daniels's consent to search his suitcase was voluntary. We find that it was. *See United States v. Ramirez Cifuentes*, 682 F.2d 337, 344 (2d Cir.1982). Furstenfeld asked Daniels if he could search his suitcase and informed him that he did not have to consent, but that he could require the officer to get a search warrant. Daniels permitted him to make a search, and even alluded to the fact that someone may have put some drugs inside. This presents no evidence of coercion, and is buttressed by the fact that they remained in a public place and not an enclosed detention-type setting.

Appellant urges that this court's recent holding in *Perchitti v. State, supra*, requires us to find the evidence seized inadmissible. This case, however, is easily dis-

tinguishable. In *Perchitti*, the officers had no justification for detaining Perchitti after the initial questioning. In the instant case, appellant was caught in an obvious lie. The officers moved Perchitti to another part of the terminal, where they asked Perchitti for consent to search his suitcase. Perchitti remained silent. The officer here did not move appellant and appellant clearly consented to the ensuing search. Furthermore, Perchitti was never advised that he did not have to consent to the search as appellant Daniels was here. Indeed, these very distinctions led us to the conclusion that the evidence was admissible.

We therefore conclude that the trial court was correct in overruling appellant's motion to suppress and in admitting the evidence at trial. Accordingly, the judgment of the trial court is affirmed.