**Thomas Edgar DANIELS Austin, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 379–84.**

Court of Criminal Appeals of Texas, En Banc.

April 9, 1986.

Ronald J. Waska, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr. and John Kyles, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

After his motion to suppress evidence was denied, appellant pled not guilty and was tried before the trial court. Appellant and the State entered into a stipulation of evidence on the basis of which appellant was found guilty of possession of a controlled substance and sentenced to five years imprisonment in the Texas Department of Corrections. His conviction was affirmed by the court of appeals. *Daniels v. State*, 681 S.W.2d 78 (Tex.App.—Houston [14th] 1984).

Appellant objected to the admission of evidence seized from him during an airport stop and search. The court of appeals held that the trial court properly overruled appellant's motion to suppress because the investigating officer had reasonable grounds to temporarily detain appellant and appellant then consented to the search of his suitcase. We granted appellant's petition to review these findings of the court of appeals.

At nine o'clock in the morning Officers Furstenfeld and Bernias of the Houston Police Department were at Houston Intercontinental Airport watching passengers deplane from a nonstop flight from Miami. This surveillance was conducted "in an attempt to identify and intercept narcotic couriers who are bringing dope into Houston." The officers were not operating on information from an informant or law enforcement agency, they were just scanning

the passengers to see if any aroused their suspicions. Two men did.

Officer Furstenfeld testified that he was suspicious first of all because the men were coming from Miami, a known source city for narcotics traffic. Of course, that was true of all the passengers. What distinguished appellant and his companion in Officer Furstenfeld's eyes was that the two men deplaned separately but then their eyes met. After a brief nod from one of them they proceeded down the concourse without speaking, but looking around nervously. Furstenfeld concluded the two were travelling together but trying to disguise that fact. He also thought they were looking back furtively as if trying to detect surveillance. If so they were unsuccessful, because Furstenfeld and Bernias followed the men to the baggage claim area without being detected.

In the baggage claim area one of the suspects handed his suit bag to the other and went to the restroom. Upon his return the men stood together, talking and joking, until a white suitcase arrived. Appellant claimed the bag and he and his companion took an elevator to the covered parking area. They were joined in the elevator by the two narcotics officers. Once all four were in the parking area Officer Furstenfeld spoke to appellant. What happened next was a matter of dispute at the hearing on the motion to suppress. However, viewing the evidence in the light most favorable to the trial court's ruling on the motion, the facts are these:[1] The officer approached appellant and asked if he might ask him a few questions. Appellant said sure. Furstenfeld identified himself as a police officer conducting an investigation and asked if he could question appellant. Appellant again consented. Furstenfeld asked if ap-

pellant and the other man were travelling together. Appellant replied that they were not. (The other man, Steve Bogden, had walked on ahead and been stopped by Officer Bernias.) The narcotics officer asked if he could see appellant's identification and plane ticket. Appellant handed him a temporary Texas driver's license in the name Thomas Daniels and a ticket folder that contained two tickets, one made out to G. Daniels and the other S. Bogden. Furstenfeld returned these items and informed appellant that he was a narcotics officer. Appellant grew visibly more nervous at this news, Furstenfeld testified. He asked permission to search appellant's luggage, informing him that he did not have to consent, but could instead require the officer to produce a search warrant. Appellant, however, consented to the search. Furstenfeld found tablets he took to be illegal drugs, and arrested appellant. A subsequent search of appellant's person turned up the cocaine for possession of which he was convicted.

The questions to be decided are, when did the officer have legally sufficient reason to detain appellant, and when did he need it?

■■■ Not all encounters between police and citizens invoke the protection of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Police are as free as anyone else to ask questions of their fellow citizens. Only when the questioning becomes a detention, however brief, must it be supported by reasonable suspicion. Reasonable suspicion is a lesser quantum of proof than the probable cause required for a full blown arrest and search. Even a brief investigatory stop, however, must be based on "spe-

---

1. It was for the trial court, as the sole finder of fact at the suppression hearing, to determine whose version of the facts was true, and the court found that the arrest was lawful. *Walker v. State,* 588 S.W.2d 920, 924 (Tex.Cr.App.1979).

Appellant's testimony was that he was stopped as soon as he stepped off the elevator, that Officer Furstenfeld blocked his path and identified himself as a police officer. He asked why appellant hadn't come in the night before, say-

ing they had word a man fitting appellant's description was supposed to be in the airport the night before, bringing cocaine from Florida. Appellant testified further the officer neither asked for nor received consent to search the suitcase. "He slammed me around against the lockers and started searching." No one told appellant he could leave or demand a search warrant.

cific, articulable facts, which in light of [the police officer's] experience and general knowledge, together with rational inference from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation." *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Cr.App.1978). A mere hunch is insufficient:

"There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful."

*Johnson v. State*, 658 S.W.2d 623, 626 (Tex. Cr.App.1983). We must therefore determine at what point, if any, appellant was detained for purposes of the Fourth Amendment, and on what Officer Furstenfeld's suspicion was based at that point.

■ The officer first spoke to appellant just after the two exited from the elevator into the covered parking area, when it was clear appellant was leaving the airport. The officer's suspicion up to then had been aroused because: (1) appellant deplaned separately from Bogden but then made eye contact with him; Furstenfeld suspected they were travelling together but trying to hide the fact; (2) appellant appeared nervous and looked behind him as he walked down the concourse ("It wasn't continuous, but each looked about two times apiece"); and (3) appellant had arrived on a flight from Miami.

Clearly these were not reasonable grounds for any level of suspicion. If appellant and Bogden were trying to disguise the fact that they were travelling together, they did a very poor job of it. They deplaned separately but walked down the concourse side by side, though a few feet apart. Once in the baggage claim area they stood together talking and joking, and Bogden gave appellant his bag to hold while he went to the restroom. Fursten-

feld, who saw all this, must have had allayed his suspicion that the men were trying not to appear to know each other. The fact that appellant was arriving from Miami did not distinguish him from any other passenger on the nonstop flight. That leaves only appellant's apparent nervousness and "furtive eye movements." As the United States Supreme Court said of a stop based on similar suspicions, these circumstances

"describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure."

*Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980).

This Court has held it unreasonable to stop a pedestrian solely because he looks over his shoulder at a police car. *Rodriguez v. State*, 578 S.W.2d 419 (Tex.Cr.App. 1979). It would be no more reasonable to stop a man who looks over his shoulder twice in an airport concourse. As for the "furtive" eye movements, they could not have been more suspicious than the furtive gestures with which this Court has often dealt, which will not be reasonable ground for suspicion where they are consistent with innocent activity.

"..., such so-called 'furtive gestures' do not bear with them the indicia of a guilty mens rea as they would had the stopping police officer been occupying a marked police vehicle. In this case, it was an unmarked police vehicle."

*Faulk v. State*, 574 S.W.2d 764, 766 (Tex. Cr.App.1979). In the instant case the plainclothes detective was the equivalent of an unmarked police car. It was no basis for suspicion that appellant, who had just disembarked from an airplane, acted nervous in the officer's presence.

So at the point of the initial encounter, Officer Furstenfeld had no grounds for reasonable suspicion. As we have already seen, however, he needed none. It was permissible for him to approach appellant and ask to speak with him. At that point

appellant, in theory at least, could have still walked away freely.

Perhaps as in *Eisenhauer v. State,* 678 S.W.2d 947, 954 (Tex.Cr.App.1984), appellant's seemingly innocent activity might have been rendered suspicious in light of an informant's tip, but here there was no tip. Officer Furstenfeld was acting strictly on the basis of what he observed.

■ Following the initial exchange the officer asked if appellant was travelling with Bogden and was told he was not. Officer Furstenfeld then asked to see appellant's ticket and identification. Noting that appellant carried two airline tickets and that one of them was made out to "G. Daniels" though appellant's driver's license gave his name as Thomas Daniels, the officer identified himself further as a narcotics officer conducting an investigation, and asked for consent to search appellant's suitcase. The State concedes this was a detention, and we agree.[2]

Officer Furstenfeld testified, "I advised him that if he so desired that he could require me to produce a search warrant prior to a search. I advised him that he did not have to consent to the search." On crossexamination, to the question, "So he could have picked up his suitcase and left?" he responded, "No, sir, I didn't tell him that." Furstenfeld said that in fact appellant was still free to take his suitcase and leave at that point, but when the same question was repeated, his answer was more ambiguous:

"Q: Would he have been free to take his suitcase and leave?

A: We use custom dogs when we need them."

And later in response to the question what he would have done if appellant had refused to consent to the search: "I would have taken his name and address and held

the bag until we had a chance to get a dog and the search warrant."

■ Less than probable cause is required to briefly seize a suspect's luggage, long enough to have it sniffed by dogs or to obtain a search warrant. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Even such a brief detention, however, must be justified by "specific and articulable facts warranting a reasonable belief that a traveler's luggage contains narcotics." *Id.,* 103 S.Ct. at 2642.

■ The officer's responses as to whether he would have allowed appellant to leave with his luggage at that point were contradictory. The test, though, is to be applied from the *suspect's* point of view, whether there has been such a display of authority that "a reasonable person would have believed he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). This Court applied that test in *Eisenhauer,* supra, and found the suspect there was effectively seized when surrounded in an airport terminal by four plainclothes police officers who told him he was suspected of transporting narcotics, asked for permission to search his bag, and gave no indication that he was free to leave.

Appellant in the instant case would be similarly unlikely to think himself free to leave when he had been stopped by an armed man[3] who identified himself as a narcotics officer, a few feet away Bogden had been stopped by another officer, Furstenfeld said he was conducting an investigation, implied that he could obtain a search warrant, and gave no indication appellant could depart. At this point the encounter amounted to at least an investigatory stop. Reasonable suspicion was therefore required to justify it.

In *Eisenhauer,* supra, an informant's tip supplied a strong ground for reasonable

---

2. Justice Brennan would also agree: "It is simply wrong to suggest that a traveller feels free to walk away when he has been approached by individuals who have identified themselves as police officers and asked for, and received, his airline ticket and driver's license." *Florida v.*

*Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1311, 75 L.Ed.2d 229 (1983) (Brennan, J., concurring).

3. Appellant testified he had seen the officer's gun, and no witness contradicted him.

suspicion after much of its information was verified. Here there was no such tip. The additional bases for suspicion turned up by Furstenfeld's questioning of appellant were (1) appellant grew visibly more nervous when his questioner identified himself as a *narcotics* officer; (2) appellant's driver's license identified him as Thomas Daniels and his plane ticket was in the name *G.* Daniels; and (3) appellant denied travelling with Bogden but was carrying two plane tickets and Furstenfeld had seen the two men together.

■ As for the first factor, nervousness when suddenly confronted by a police officer who asks one questions is as indicative of innocence as of guilt. *Glass v. State,* 681 S.W.2d 599, 602 (Tex.Cr.App.1984). Many people react nervously to being approached by police.

The discrepancy in initials is of little consequence. In *United States v. Glass,* 741 F.2d 83 (CA5 1984), it was held that even in the light of an initial anonymous tip, the fact that someone is travelling under an assumed name does not give rise to a reasonable suspicion that he is carrying narcotics. Here appellant was travelling only under an assumed initial, but he had paid for his ticket with a credit card bearing his correct name, the imprint of which appeared on the ticket.

This leaves as the basis for suspicion only that appellant denied he was travelling with Bogden. It was clear the two men knew each other, but Officer Furstenfeld testified specifically that appellant did not say he did not *know* Bogden, only that he was not travelling with him. Yet appellant had two airline tickets in his ticket folder. As Furstenfeld had not yet spoken to Bogden, however, and did not know his name, he had no way of knowing whether the second ticket was his. It was as likely

the two men had just met on the plane and would be going their separate ways again when they reached their cars; or that appellant feared Bogden was the actual focus of a police investigation and wished to disassociate himself from him. Even if Furstenfeld's conclusion that appellant was lying gave rise to a reasonable suspicion "that some activity out of the ordinary is occurring or has occurred," it was not a reasonable ground for concluding that the unusual activity was criminal or that appellant was connected to the hypothetical crime. *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Cr.App.1983).

■ There is finally the issue of appellant's alleged consent to search his luggage.[4] It is at least arguable that Furstenfeld's telling appellant he could force the officer to obtain a warrant for the search implied that a warrant *could* be obtained, leaving appellant to conclude a search was inevitable with or without his consent. That would have rendered the consent invalid. See *Doescher v. State,* 578 S.W.2d 385, 391 (Tex.Cr.App.1979). We need not reach that issue because the consent, valid or not, was the result of the illegal stop and thus fatally tainted by the illegality of the stop. *United States v. Glass,* supra; *United States v. Ballard,* 573 F.2d 913, 916 (CA5 1978).

We reiterate what was said in *Davis v. State,* 576 S.W.2d 378, 380 (Tex.Cr.App. 1979), concerning the requirement that an officer have specific and articulable facts justifying his suspicion before an investigatory stop will be valid:

"This requirement must not become a mere form of words. To allow searches without actual justification would eviscerate the Fourth Amendment guarantees against unreasonable search and seizure. The test is whether the facts

4. Reviewing the facts in the light most favorable to the trial court's ruling we assume appellant did consent to the search of his suitcase. We note, however, the remark by the Fifth Circuit Court of Appeals in *United States v. Berry,* 670 F.2d 583 (CA5 1982) at n. 16: "We think it strikingly unusual that so many individuals stopped at airports consent to search while carrying drugs, and even show where they have hidden drugs. Though 'the question is not whether respondent acted in her self-interest [by consenting to a search], but whether she acted voluntarily,' the courts should consider how reasonable a story is in determining whether consent was given voluntarily [citations omitted throughout]."

**708**

known to the officer at the moment of the stop and search would warrant a man of reasonable caution in belief that the action taken was appropriate."

The facts known to the officer in the instant case did not render his action appropriate. The evidence seized as a result of the illegal stop should have been suppressed. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The judgment of the court of appeals is reversed and the cause is remanded for new trial.

McCORMICK, J., dissents.