Douglas Eugene HOLLADAY, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–87–226–CR.

Court of Appeals of Texas, Houston (14th Dist.).

June 16, 1988.

James M. Murphy, Dallas, for appellant.

John B. Holmes, Jr., Winston E. Cochran, Jr., Mark Vinson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

The conviction is for possession of cocaine; the punishment is seven years confinement, for which probation was granted, and a fine of $1800. Appellant's sole issue is the legality of the search. We affirm.

Initially, the state asserts the issue is not preserved for appellate consideration. In response to appellant's motion to suppress, a lengthy hearing was conducted, but the motion to suppress was denied. Thereafter, the judgment reflects that appellant entered a plea of guilty and "consented to the oral stipulation of evidence and to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence." The record before us does not contain a transcript of what evidence the court heard at the plea proceedings. There is included in the clerk's transcript a document entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession" which has noted thereon "St.Ex. # 1," which states:

> In open court and prior to entering my plea, I waive the right of trial by jury. I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination. The charges against me allege that in Harris County, Texas, I DOUGLAS EUGENE HOLLADAY hereinafter styled the Defendant, heretofore on or about May 22, 1986, did then and there unlawfully, intentionally and knowingly possess a controlled substance, namely, COCAINE, weighing less than 28 grams by aggregate weight, including any adulterants and dilutants AGAINST THE PEACE AND DIGNITY OF THE STATE.

> I understand the above allegations and I confess that they are true and that the acts alleged above were committed on May 22, 1986.

> In open court I consent to the oral and written stipulation of evidence in this case and to the introduction of affidavits, written statements of witnesses, and other documentary evidence.

This form was signed and sworn to by appellant and bears the signature of his counsel, state's counsel and the trial judge. *See* TEX.CRIM.PROC.CODE ANN. art. 1.15 (Vernon 1977); TEX.R.APP.P. 40(b)(1).

To conclude that the issue of whether the trial court erred in overruling the motion to suppress is properly before us, this court must make *three* presumptions: (1) that the document marked "St.Ex. # 1" was in-

troduced into evidence at the time appellant entered his plea of guilty; (2) that the trial court heard no other evidence offered by either the state or the defendant; and (3) that the plea of guilty was made subject to the motion to suppress.

 While it may be argued that we may indulge in the first two presumptions, there is absolutely no way the third presumption can be made. The general rule is that when a pre-trial motion to suppress is overruled, it is not necessary to object when the evidence is offered at trial in order to preserve error for appeal. However, when the accused affirmatively asserts during trial that he has "no objection" to the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling. *Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim.App.1986). I would hold that in the absence of a record sufficient to show that the plea of guilty was made subject to the ruling on the motion to suppress, appellant's contention has not been preserved for our review. *See Garcia v. State*, 704 S.W.2d 512, 517–18 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) (Robertson, J., concurring and dissenting). However, the majority of the panel believes otherwise, and we will therefore address the issue on the merits.

A brief recitation of the facts is necessary. On May 22, 1986, Officer Burnias and Officer Gann were on a narcotics detail at Hobby Airport in Houston when they observed appellant and Miles arrive on a flight from Miami. Both appellant and Miles appeared to be nervous. Burnias, who was in plainclothes, walked next to appellant and asked permission to speak to him, and appellant consented. As the two continued to walk, Burnias showed appellant his police identification card. He did not tell appellant that he was conducting an investigation, nor did Burnias tell appellant that he was a narcotics officer. Burnias asked appellant if he had arrived in Houston on a flight, and appellant responded that he had not. Appellant then stopped and turned to Burnias; the officer again asked appellant if he had just arrived in

Houston, and he repeated that he had not. The officer asked appellant if he could see his plane ticket, and appellant responded that he had not purchased one. Burnias also asked appellant "if he knew Mr. Miles or if he was traveling with him and he denied knowing him or even traveling with him." Appellant was told that Miles had admitted to knowing him, and appellant let out two sighs as if "he had been had."

At this time, Burnias asked appellant for some identification; appellant, his hands trembling, handed the officer his driver's license. Burnias then asked permission to look in appellant's carry-on bag informing him that "he had the right to refuse to look into his bag. He told us there was nothing to hide, that I could look inside." Two plane tickets were found in the bag; only one of the tickets apparently bore the correct name. Burnias asked appellant for permission to conduct a pat down search of him informing appellant that he did not have to allow the search. Appellant consented to the search, and then turned and put his hands against the wall. Burnias told appellant to take his hands down, told him that he was free to leave, and that he was given permission to do so. Appellant still consented to the search. A pat down search was conducted, and a bulge was detected in one of appellant's boots where a white powdery substance was found which later turned out to be cocaine. Appellant was never threatened with a search warrant, and Burnias did not display a weapon.

Appellant relies most strenuously upon *Daniels v. State*, 718 S.W.2d 702 (Tex. Crim.App.1986) in his contention that the cocaine was illegally seized and thus that the motion to suppress should have been granted. A brief recitation of the facts in *Daniels* is necessary in order to compare the two cases. In that case, Daniels arrived in Houston on a flight from Miami. He arrived separately from his companion, and then the two met. Both appeared nervous and appeared to be attempting to avoid surveillance. An officer approached Daniels and asked him if he might ask him a few questions, and Daniels consented. The officer identified himself as a police officer conducting an investigation and

again asked if he could question Daniels, and Daniels again consented. Daniels claimed that he was not traveling with his companion, but he did claim to know him. The officer asked Daniels for some identification and his plane ticket. The driver's license bore the name "Thomas Daniels," and the plane ticket bore the name "G. Daniels." The officer informed Daniels that he was a narcotics officer, and Daniels grew more nervous. The officer then asked permission to search Daniels' luggage "informing him that he did not have to consent, but could instead require the officer to produce a search warrant." Daniels consented to the search. Apparently at no time did the officer tell Daniels that he could leave. The search was conducted, and what appeared to be drugs were found. Daniels was arrested, and cocaine was found in the search incident to the arrest. *Daniels*, 718 S.W.2d at 703–04. The court of criminal appeals held, "The facts known to the officer in the instant case did not render his action appropriate." *Daniels*, 718 S.W.2d at 708.

■ When a police officer's investigation becomes a detention, it must be supported by reasonable suspicion. Reasonable suspicion must be based on "specific, articulable facts, which in light of [the police officer's] experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for further investigation." *Daniels*, 718 S.W.2d at 704–05 (quoting *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Crim.App. 1978)). Appellant claims that Officer Burnias did not know enough facts in order to provide a basis for such reasonable suspicion. We disagree.

■ The court of criminal appeals in *Daniels* held that the facts before it "were not reasonable grounds for any level of suspicion." *Daniels*, 718 S.W.2d at 705. However, there are significant differences in what happened in *Daniels* with what happened in the instant case which provided the basis for the officers to conduct an investigatory stop. Although it is not clear in *Daniels*, in our case, appellant was the

first to stop; he was not asked to do so by the officer. At this point, no detention for fourth amendment purposes had been made. "Police are as free as anyone else to ask questions of their fellow citizens." *Daniels*, 718 S.W.2d at 704. The fact that appellant stopped of his own volition at that particular time did not thereby turn the conversation into a detention for which Officer Burnias would have to have had reasonable suspicion.

■ Appellant had also initially made responses to questions which were clearly lies. The officers had seen appellant and Miles arriving in Houston together from Miami. When asked if he had just arrived in Houston, appellant repeatedly replied that he had not. Appellant also denied knowing or even traveling with Miles when it was clear that quite the opposite was true. While Daniels' initial statements to the officers may have been lies, they could not have appeared to have been erroneous on their face. The facts in this case, taken together and coupled with the officer's experience and general knowledge, were the specific, articulable facts necessary to allow Officer Burnias to proceed with his investigation further. "[W]hen used by trained law enforcement officers, objective facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion." *United States v. Cortez*, 449 U.S. 411, 419, 101 S.Ct. 690, 695–96, 66 L.Ed.2d 621, 629 (1981). *See also United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605, 615 (1985). The context of a particular law enforcement practice may also aid in the determination of the reasonableness of an investigatory stop. *United States v. Place*, 462 U.S. 696, 704, 103 S.Ct. 2637, 2643, 77 L.Ed.2d 110, 119 (1983). *See also United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ Appellant contends that a detention for fourth amendment purposes occurred when Officer Burnias asked appellant for identification. Appellant notes that "the test to determine detention is to be applied

from the suspect's point of view...." While this is true, the test is not a subjective one. The test is "whether there has been such a display of authority that 'a reasonable person would have believed he was not free to leave.'" *Daniels,* 718 S.W.2d at 706 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980)). It is also important for these purposes to note that Officer Burnias did not initially tell appellant that he was conducting an investigation or that he was a narcotics officer. However, this was done at the beginning of the questioning in *Daniels.* In fact, this was a key factor used by the court of criminal appeals in determining that Daniels had been detained for purposes of the fourth amendment. *Daniels,* 718 S.W.2d at 706 & n. 2.

While it appears that Officer Burnias had sufficient facts before him to conduct an investigatory stop, there were additional factors in the instant case which insured the reasonableness of the detention as distinguished from that in *Daniels.* Appellant was told a number of times that he could leave and that he did not have to consent to any searches. No condition was placed upon that, i.e., appellant was never told that the officers could or would get a warrant. The appellant in *Daniels* was told that he did not have to consent to the search, but *he could require the officer to go and get a search warrant instead.* Daniels was not told that he was free to leave; in fact, the officer in *Daniels* did not make it clear that the suspect would have been free to leave, but he testified, "I would have taken his name and address and held the bag until we had a chance to get a dog and the search warrant." *Daniels,* 718 S.W.2d at 706. When Officer Burnias was asked on cross-examination, "What would you have done if [appellant] would have just turned around, picked up his bag and walked off?" he responded, "He would have walked, sir." It appears that appellant may have had a subjective feeling of restraint especially when he voluntarily placed his hands upon the wall prior to the pat down search. However, it was at that time that Officer Burnias told him to take his hands down from the wall, that he was free to leave, and that he had permission to do so. We hold that any reasonable person in such a situation would have known that he was free to leave. *See Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

Appellant also places some reliance upon *Perchitti v. State,* 659 S.W.2d 75 (Tex.App.—Houston [14th Dist.] 1983,) and *Curry v. State,* 699 S.W.2d 331 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). In *Perchitti,* the facts started out much the same as here until the investigation reflected nothing but the legitimacy of Perchitti's trip from Miami. The officers in *Perchitti* then moved the defendant to another place and searched him *again.* This clearly went beyond what was done in the instant case. Also, no consent was apparently ever given in *Perchitti.* In *Curry,* the defendant had started to leave the officer after being initially questioned, but he grabbed her by the arm and took her to another room. No narcotics were found until the defendant was moved to another room and strip-searched. It is not clear whether consent was actually given in *Curry,* but it is clear that those facts went way beyond those in the instant case. Appellant's sole point of error is overruled.

The conviction is affirmed.