**Darryl Clyde BARNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–91–00249–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 11, 1993.

Discretionary Review Refused June 30, 1993.

Joseph H. Lobley, Houston, for appellant.

John B. Holmes, Dist. Atty., Carol M. Cameron, Asst. Dist. Atty., Mike Beckwith, Asst., for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and PRICE [1], JJ.

## OPINION ON MOTION REHEARING

MIRABAL, Justice.

We withdraw our earlier opinion, we substitute the following opinion in its stead, and we overrule appellant's motion for rehearing.

After his motion to suppress was overruled, appellant, Darryl Clyde Barnes, pled guilty to the offense of possession of cocaine weighing less than 28 grams. The trial court found two enhancement paragraphs true and assessed punishment at 25–years confinement pursuant to a plea bargain agreement. We affirm.

In two points of error, appellant asserts the trial court erred in overruling his motion to suppress the evidence because the temporary investigative detention, warrantless arrest, and warrantless search were not lawful.

At the suppression hearing, the State stipulated that the search was warrantless. The only witnesses to testify were Houston Police Officers J.A. Begeal, Jr. and G.L. Collard. The evidence, viewed in the light most favorable to the trial court's ruling, is as follows:

On November 2, 1990, Officers Begeal and Larsen were on patrol in a high crime area. The officers were dressed in police uniform. They were participating in a Patrol Management Plan (PMP) to reduce criminal activity. Officer Begeal described the purpose of the police activities under the plan as being to "[control] traffic for any traffic offense we would find; try to make it hard for people to go in and out to buy drugs or to use stolen cars or to do their burglaries; also to control and observe—if we observed any kind of drug transactions or criminal activity going on, try to suppress that, also." Under the PMP, police presence was intended to serve the purpose of discouraging crime. The particular PMP that was in effect November 2, 1990, was designed for an apartment complex area that "had a drug problem/burglary problem/stolen-car problem."

About 7:30 p.m., Officer Begeal observed a man sitting on the curb of the apartment complex parking lot. From prior dealings, Officer Begeal knew this man was involved in narcotics trafficking. The man had a brown paper bag in his hand and appeared to be talking to the passenger in a car parked next to him. Officers Begeal and Larsen notified the other units they were going to check these people out, then pulled into the parking lot, parking their marked patrol car at a slanted angle behind the target car. Neither the siren nor the emergency lights were on. The parking spaces on both sides of the target car were empty.

There were two people in the car. Appellant was sitting in the passenger's seat. Officer Begeal got out and talked to the man sitting on the curb. Officer Larsen positioned himself toward the rear of the car so he could observe the car, the people in it, and the man on the curb. Officer Begeal asked the man on the curb how he was doing. He also asked the man if he knew the people in the car; he said he did not.

Officer Begeal then went around the car and talked to the driver. The driver was a woman. Officer Begeal asked her how she was doing, what she was doing in the area, and if she lived there. She answered she was there visiting, was from Louisiana, and didn't live there.

Officer Begeal then spoke to appellant from the driver's side of the car. He asked appellant what his name was and if he lived there. Officer Begeal testified appellant responded, but he couldn't understand him. He went around to the passenger side of the car to try to hear appellant better. He asked his name again, but again could not understand him. Officer Begeal asked appellant if he lived there. Appellant mumbled and shook his head no. Officer Begeal also asked appellant if he had any drugs, and appellant either said no or shook his head.

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

During this exchange, the driver of the car told Officer Begeal that appellant had just gotten out of prison, and was afraid of the police. Officer Begeal asked appellant to step out of the car, thinking he could understand appellant better by talking face to face. Officer Begeal testified that if appellant had refused to speak to him or had indicated an unwillingness to respond, the officer would probably not have asked appellant to get out of the car. The reason he asked him to get out was because he could not understand appellant's responses. Appellant voluntarily got out of the car; he did not resist or indicate he did not want to talk to Officer Begeal.

Sometime during the exchange between Officer Begeal and appellant, a second marked patrol car carrying uniformed Officers Collard and Couch, turned into the parking lot. The second patrol car parked to the right of and diagonal to appellant's car. Officer Collard got out, came up to the car, and stood next to Officer Begeal. Officer Begeal testified that when appellant stepped out of the car:

> A: Officer Collard almost instantaneously said, "He's got something in his mouth," and grabbed his jaw—grabbed Mr. Barnes' jaw.

Officer Begeal testified he then assumed appellant was trying to swallow narcotics. He was aware that other officers had that happen to them. He recalled that in one instance, the suspect suffocated when the narcotics lodged in his throat, and in another instance the suspect died in "the back seat" after ingesting cocaine. Officer Begeal grabbed appellant's throat with his left hand and bent him over with his right. Appellant spit out a piece of tissue paper and two pieces of cocaine. Three more pieces of crack cocaine were found still wrapped in the tissue paper.

Officer Collard testified that, while appellant was still inside the car, Collard observed "what appeared to be white tissue paper" in appellant's mouth as he mumbled in answer to Officer Begeal's questions. He had seen many people involved in narcotics carry crack cocaine in tissue paper. If appellant had not voluntarily stepped out of the car,

Collard would have removed him from the car because of the tissue paper in his mouth. Officer Collard said when appellant stepped out of the car he saw him trying, with his tongue, to either get the tissue to the backside of his mouth to conceal it, or possibly appellant was trying to swallow the tissue. Officer Collard immediately grabbed appellant on his cheek with his index finger and his thumb to keep him from swallowing.

In his first point of error, appellant asserts the trial court erred in overruling his motion to suppress because the police did not have sufficient articulable facts to justify a temporary investigative detention, and they lacked probable cause for a warrantless arrest. In his second point of error, appellant argues the scope and intensity of the search exceeded that allowed for a brief investigatory detention.

The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Freeman v. State,* 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *Perez v. State,* 818 S.W.2d 512, 514 (Tex.App.—Houston [1st Dist.] 1991, no pet.) On appellate review, the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling. *Daniels v. State,* 718 S.W.2d 702, 702 (Tex.Crim.App.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

 No *stop* or *detention* occurs, for fourth amendment purposes, if a police officer merely approaches a person in a public place and asks questions, as long as the person is free to leave. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *Holladay v. State,* 805 S.W.2d 464, 471 (Tex.Crim.App.1991); *Daniels,* 718 S.W.2d at 704–06; *Perez,* 818 S.W.2d at 515. The fact that the officer identifies himself as a police officer during the questioning, without more, does not convert the encounter into a seizure requiring some level of objective justification, *Royer,* 460 U.S. at 497–98, 103 S.Ct. at 1323–24; *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497

(1980) (plurality opinion of Stewart, J.) (5–4 decision). Police are as free as anyone else to ask questions of their fellow citizens. *Holladay*, 805 S.W.2d at 471; *Daniels*, 718 S.W.2d at 704. Only when the questioning becomes a detention, however brief, must it be supported by reasonable suspicion. *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326 (Royer seized when officers identified themselves as narcotics agents, told Royer they suspected him of drug trafficking, and asked him to accompany them to a police room while they kept his ticket and identification); *see Holladay*, 805 S.W.2d at 472 (officer's request for permission to search defendant's luggage converted initial encounter into an investigative detention); and *Daniels*, 718 S.W.2d at 706 (defendant detained when officer discovered discrepancy between name on his driver's license and plane ticket, told defendant he was a narcotics officer, and asked to search defendant's suit case).

Appellant relies particularly on *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App. [Panel Op.] 1980), and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), for his argument that he was seized when the police came up to him in the car and then asked him to step out. In *Ebarb*, the parked car was in the defendant's son's private driveway at home, not in a public place. Further, the police officer asked if he could search the car (which, under *Holladay* and *Daniels*, transformed the encounter into a detention), and the officer testified he would not have allowed the defendant to leave. In *Brown*, police officers stopped the defendant in an alley and asked him to identify himself. The defendant refused to identify himself and angrily asserted the officers had no right to stop him. The officers "frisked" the defendant but found nothing. They then arrested the defendant because he had refused to reveal his name and address.

■ In the present case, the police officers approached appellant and his companion in a public place while they were sitting in the parking lot of an apartment complex. The trial court could have concluded from the evidence that the police car was parked in such a way that appellant's car could have exited the parking lot if the driver of the car had desired to leave. The questions asked of appellant and his companion (How are you doing? What are you doing in this area? Do you live in these apartments? What is your name? Do you have any drugs?) did not convert the encounter into a seizure. *See Holladay*, 805 S.W.2d at 471–72.

In our opinion, the trial court could have reasonably, and properly, concluded there was no *seizure* or *detention* of appellant until the officer asked appellant to step outside the car. Therefore, the issue is whether the detention of appellant at that point was legal.

■ Not all seizures of the person must be justified by probable cause to arrest for a crime. *Royer*, 460 U.S. at 497–98, 103 S.Ct. at 1323–24; *Daniels*, 718 S.W.2d at 704. Since a temporary detention represents a lesser intrusion on an individual's security and integrity than a formal arrest, *reasonable suspicion of criminal activity* warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975); *Perez*, 818 S.W.2d at 515–16. Temporary detention for questioning on less than probable cause is warranted where the public interest involved is the suppression of illegal transactions in drugs or of any other serious crimes. *Royer*, 460 U.S. at 497–98, 103 S.Ct. at 1323–24; *Perez*, 818 S.W.2d at 516.

■ To justify an investigative detention, the officer must have a reasonable suspicion, based on specific, articulable facts that, in light of the officer's experience and general knowledge, lead the officer to the reasonable conclusion that criminal activity is underway and that the detained person is connected with the activity. *Holladay*, 805 S.W.2d at 47; *Daniels*, 718 S.W.2d at 705; *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App. 1983); *Pickens v. State*, 712 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

■ At the time appellant was asked to step out of the car, Officers Begeal and Collard were standing together near the car door. Officer Collard testified he observed appellant while he was sitting inside the car.

It appeared to Officer Collard that appellant had tissue paper in his mouth, and appellant was mumbling responses to Begeal's questions. Based on his experience, Officer Collard knew that people involved in narcotics often carry crack cocaine in tissue paper. Officer Begeal asked appellant to step out of the car and appellant did so, making it unnecessary for Officer Collard to order appellant out. Officers Begeal and Collard were acting jointly. The trial court could have reasonably found that Officer Collard had reasonable suspicion, based on specific, articulable facts, that led him to the reasonable conclusion that criminal activity was underway and that appellant was connected to the activity. Such reasonable suspicion justified a temporary detention of appellant.

 Appellant next claims that when he was grabbed in the face and around the throat, and forcibly bent over, he was arrested without any probable cause to believe he had committed, or was committing a crime.

A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, and (2) the arrest falls within one of the exceptions specified in TEX.CODE CRIM.P.ANN. art. 14.01 through 14.04 (Vernon 1977). *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App. 1989). Article 14.01(b) provides:

> (b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.

TEX.CODE CRIM.P.ANN. art. 14.01(b) (Vernon 1977). The test for probable cause for an arrest without a warrant is whether, at that moment, the facts and circumstances within the officer's knowledge and of which the officer had reasonable, trustworthy information were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim. App.1989).

In the present case, when appellant exited the car, he appeared to be trying to either swallow the tissue, or to push it to the back of his mouth with his tongue. It appeared appellant was definitely trying to conceal the tissue and its contents. Considering all the circumstances, the evidence supports the conclusion that the officers had probable cause to arrest appellant and to seize the contraband in his mouth. *See Gonzales v. State*, 648 S.W.2d 684, 687 (Tex.Crim.App. 1983) (officer had probable cause to arrest defendant and seize balloons without a warrant, when officer had knowledge individuals transported heroin in their mouth, observed that defendant had trouble talking, and observed that defendant had balloons underneath his tongue).

We overrule appellant's points of error one and two.

We affirm the judgment.