Ruben ARROYO, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–92–00947–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 23, 1994.

Gerald Fry, Houston, for appellant.

Ernest Davilla, Houston, for appellee.

Before MURPHY, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellant was charged with the felony offense of possession of a controlled substance, namely heroin. The trial court denied appellant's motion to suppress evidence. Appellant then entered a plea of no contest pursuant to a plea agreement. The trial court found him guilty as charged in the indictment and assessed punishment at five (5) years in the Institutional Division of the Texas Department of Criminal Justice and a $1,000 fine. In a single point of error, appellant asserts that the trial court committed reversible error by overruling his motion to suppress evidence. We affirm.

On June 10, 1992, Houston police officers, R. Rodriguez and R.D. Mosely, were assigned to airport detail at Hobby Airport. Officer Rodriguez had been a police officer for over nine years and had experience, training, and involvement in numerous narcotics investigations.

Around 9:50 p.m., the officers were observing the concourse with passengers arriving from New York's Kennedy Airport. The flight from New York to Houston was known to be used by narcotics couriers.

Officer Rodriguez saw Ramon Rivera exit the jetway without any luggage or contact with other passengers. The officers then saw appellant, Ruben Arroyo, walking several passengers behind Rivera. Appellant carried a tote bag and walked to a pay telephone. Appellant dialed a pager number and hung up the phone. Officer Rodriguez noticed Rivera walk back to the pay phone area and stand a few feet from appellant. After a short period, Rivera walked up the concourse again.

Officer Rodriguez saw appellant wait for a return call on his page until a female passenger used the same telephone. Appellant then walked up the concourse to the ticket lobby. Officer Rodriguez noticed that appellant walked slowly, but then quickly picked up his pace.

The officers followed appellant down to the baggage area where Rivera was waiting for him. Appellant and Rivera walked and talked together. The officers saw the two men walk out of the lower lobby into the parking area.

At that point, Officer Rodriguez approached appellant and asked if he could speak with him. Appellant responded, "yes." Rivera continued to walk towards the parking lot and did not stop. Officer Rodriguez identified himself to appellant as a Houston police officer and held up his identification. Officer Rodriguez asked appellant if he was travelling with anyone. Appellant replied, "no."

Officer Rodriguez then asked appellant if he had arrived on a flight. Appellant replied, "yes, from New York." Appellant also said that he lived in Connecticut. When Officer Rodriguez asked appellant for his flight ticket, appellant produced a one-way ticket to Houston. The ticket was purchased on June 10, 1992, in the name of "Rui Arroyo."

Officer Rodriguez returned the ticket and asked appellant for some identification. Appellant pulled out his wallet and became extremely nervous. His hands were shaking while he fumbled through his wallet. Officer Rodriguez noticed that the wallet contained an ID bearing the name "Wilfredo Justiniano." Appellant claimed that the ID belonged to his brother. Appellant eventually produced a photocopy of a Connecticut driver's license with the name of "Ruben Arroyo." When asked, appellant said that he was going to be in Houston for a week to visit his cousin, but that he was going to stay at the Ramada Inn. Throughout the conversation, appellant continued to exhibit excessive nervousness.

Officer Rodriguez observed that appellant had a large bulge in his front pants pocket and in the crotch area. Officer Mosely, who was standing a few feet away, noticed that appellant had another bulge in a side pocket. The officers asked appellant what was in his pockets. Appellant replied that it was "spices."

Then, Officer Rodriguez informed appellant that he was a narcotics officer conducting a narcotics investigation. He asked appellant whether he possessed any narcotics on his person or in his bag, and appellant replied, "no." Officer Rodriguez then asked appellant if he would allow him to look in the bag and informed him that he did not have to allow him access to the bag. Appellant told the officer to go ahead and look in the bag.

Officer Rodriguez asked appellant if he could check his pockets and waist. Appellant replied, "go ahead." Officer Rodriguez then felt a hard round object in the front of appellant's crotch area and on the side pocket. Appellant stated again that it was "spices." Officer Rodriguez noticed that appellant continued to sweat and breathe nervously.

The officers told appellant that they were going to step into a private office to conduct a proper search. Appellant agreed and stepped into the office. The officers then found four packages containing a substance that was later identified as heroin.

In his sole point of error, appellant contends that the trial court erred in overruling his motion to suppress because the heroin was the fruit of an illegal temporary detention. Appellant further argues that any alleged consent was not voluntarily given, but was the result of psychological coercion.

In reviewing a ruling on a motion to suppress evidence, an appellate court views the evidence in the light most favorable to the trial court's ruling. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Posey v. State,* 763 S.W.2d 872, 874 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). As a basis for ruling on a motion to suppress, the trial judge is entitled to believe or disbelieve any or all of a witness' testimony, and the appellate court is not at liberty to disturb any finding supported by the record. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991); *Rysiejko v. State,* 782 S.W.2d 529, 532 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd). Furthermore, unless there is a clear showing of abuse of discretion, a trial court's ruling on the admissibility of the evidence should not be reversed. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

Not every encounter between police and citizens invokes the protection of the Fourth Amendment. *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.1986), *overruled on other grounds,* 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988). Police are as free as anyone else to ask questions of their fellow citizens. *Daniels,* 718 S.W.2d at 704. Only when the questioning becomes a detention, however brief, must it be supported by reasonable suspicion. *Id.* The test for a detention is whether there has been a display of authority that "a reasonable person would have believed he was not free to leave." *Id.* at 706, quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

In *Holladay v. State,* the Court of Criminal Appeals addressed airport investigative detentions. *Holladay v. State,* 805 S.W.2d 464, 471 (Tex.Crim.App.1991). In *Holladay,* an officer told Holladay that he was a police officer, but did not state that he was a narcotics officer. *Id.* The officer asked Holladay if he could talk to him, and Holladay agreed. *Id.* The officer then asked if Holladay had arrived in Houston on a flight, asked to see his ticket, and asked for some identification. *Id.* The court held that the initial encounter was consensual at that point and did not implicate fourth amendment protections against unreasonable searches or seizures. *Id.* The officer then told Holladay that he was investigating narcotics and asked permission to search Holladay's bag. *Id.* at 471–72. He also told Holladay he could refuse the search, and testified that, at that time, Holladay was free to

leave. *Id.* at 472. The court found that the request for permission to search the bag converted the encounter into an investigative detention, implicating fourth amendment rights. *Id.* Based on *Holladay,* we find that appellant was detained when Officer Rodriguez informed appellant that he was a narcotics officer conducting a narcotics investigation and asked to search appellant's bag. Reasonable suspicion was, therefore, required to justify the stop.

■ To justify a brief investigative detention, the officer must know specific, articulable facts, which, in light of his experience and personal knowledge, together with reasonable inferences, would warrant detaining the suspect. *Meeks v. State,* 653 S.W.2d 6, 12 (Tex.Crim.App.1983). Those specific facts must amount to more than a mere hunch or suspicion. *Id.* Even a temporary detention is not permissible unless the circumstances objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Crim.App.1992); *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991). Circumstances raising suspicion of illegal conduct need not be criminal. *Id.* at 311. The issue is not whether the particular conduct is innocent or criminal, but rather the degree of suspicion that attaches to particular noncriminal acts. *Holladay,* 805 S.W.2d at 471.

■ In the present case, appellant asserts that the officers had no reasonable suspicion to detain him. Appellant relies on *Daniels* to support his contention that the temporary detention was illegal. *Daniels,* 718 S.W.2d at 702. In *Daniels,* the officer's suspicion was based on these factors:

(1) Daniels deplaned separately from Bogden but then made eye contact with him; Officer Furstenfeld suspected they were traveling together but trying to conceal that fact;

(2) Daniels appeared nervous and looked behind him as he walked down the concourse;

(3) Daniels had arrived on a flight from Miami;

(4) Daniels grew visibly more nervous when Officer Furstenfeld identified himself as a narcotics officer;

(5) Daniels' driver's license identified him as Thomas Daniels while his plane ticket was in the name of G. Daniels; and Officer Furstenfeld had seen the two men together.

In that case, the court found these factors did not form a basis for reasonable suspicion. *Id.* at 707.

On the contrary, the State contends that the initial detention of appellant was justified by reasonable suspicion that a crime had been committed or was about to be committed. The State points to the following factors:

(1) Appellant deplaned with another man from a flight known to be used by narcotics couriers.

(2) Appellant dialed a pager number but did not wait for the return call on the page.

(3) Appellant walked in an erratic manner; first he walked slowly then suddenly increased his pace.

(4) Appellant apparently lied about traveling with another man.

(5) Appellant claimed that he lived in Connecticut yet he had a one-way ticket to Houston from New York.

(6) When asked for identification, appellant became extremely nervous;

(7) Appellant had conflicting forms of identification. In his wallet he had one ID for a "Wilfredo Justiniano" and another ID was a photocopy of a Connecticut driver's license for "Ruben Arroyo." The flight ticket was issued to a "Rui Arroyo."

(8) Appellant claimed that he was in Houston to visit a cousin but that he was going to stay at a Ramada Inn. Appellant maintained that he had planned a stay in Houston for a week yet he did not buy his plane ticket until that same day. Appellant continued to exhibit nervousness during this conversation.

(9) Officer Rodriguez saw that appellant had a large bulge in his front pants pocket and in his crotch area. Officer

Mosely saw another bulge in appellant's side pocket. When asked what he had in his pockets, appellant asserted that it was "spices."

In addition, Officer Rodriguez testified that he had been a police officer for over nine years with experience, training, and involvement in numerous narcotics investigations. These facts taken together and viewed most favorably to the trial court's ruling were the specific, articulable facts necessary to allow the officer to proceed with his initial investigative detention. We find that the officer had sufficient reasonable suspicion to initially detain appellant. Consequently, the detention was valid under the Texas and United States Constitutions.

The State further asserts that the facts in the present case are substantially similar to those in *Holladay*. We agree. In *Holladay*, the court found that the seizure was justified because of the reasonable degree of suspicion that the experienced officers inferred from the defendants conduct that he was engaged in a criminal activity. The relevant conduct was that:

(1) Appellant deplaned, with another man, from a flight from Miami, a known drug source city;

(2) Both men scanned the lounge area before walking to the monitor and appeared nervous;

(3) Appellant lied about arriving in Houston on a flight from Miami;

(4) Appellant lied about traveling with the other man, Mr. Miles; and

(5) Appellant was nervous when he produced his driver's license for Officer Burnias.

Also, Officer Burnias testified at the suppression hearing that he had been a police officer for almost fourteen years and had been specifically on airport detail for about five years.

Moreover, there were additional factors in this case that showed the reasonableness of the detention as distinguished from that in *Daniels*. First, Officer Rodriguez, like the officer in *Holladay*, did not initially tell appellant that he was conducting an investigation or that he was a narcotics officer. However, this was done at the beginning of the questioning in *Daniels*, and was a key factor used by the court in determining that Daniels had been detained. *Daniels*, 718 S.W.2d at 702. Secondly, as in *Holladay*, appellant here was specifically told that he did not have to allow the officer to look in his bag. In contrast, the appellant in *Daniels* was told that he did not have to consent to the search, but he could require the officer to go and get a search warrant instead. Finally, neither in *Daniels* or *Holladay* did the defendant have usually large bulges in his pants, which he claimed to be "spices."

The State also argues that appellant consented to the search of his bag and his person. An individual may consent to a search, and thus, waive the fourth amendment protection against unreasonable searches and seizures. *Meeks v. State*, 692 S.W.2d 504, 509 (Tex.Crim.App.1985). When the State relies on consent to justify a search, the State must prove by clear and convincing evidence that the consent was freely and voluntarily given. *Id.; Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). The burden requires the State to show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Meeks*, 692 S.W.2d at 509. The consent is invalid if granted only in submission to a claim of lawful authority. *Id.* Voluntariness is a question of fact to be determined from the totality of all the circumstances. *Id.* at 510.

In the instant case, the trial court considered appellant's motion to suppress on affidavits alone in accordance with TEX.CODE CRIM. PROC.ANN. art. 28.01, § 1(6) (Vernon 1989). The affidavit of Officer Rodriguez states in pertinent part:

... I then informed Arroyo that I was a narcotics officer conducting a narcotics investigation and asked if he was carrying any narcotics on his person or in his bag. Arroyo stated no. I then asked if I could look in his bag and informed him that he did not have to allow me to do so. Arroyo told me to go ahead. I had also noticed that Arroyo had what appeared to be large bulges in his front pants pocket and crotch area. Officer Mosely who was at that time

standing a few feet away also noticed a side pocket. We asked Arroyo what was in his pockets and he replied "spices." At this point, I asked Arroyo if I could check his pockets and waist, Arroyo replied "go ahead."

While a warning that an individual does not have to consent to a search and has the right to refuse is not required, the showing of a *Miranda* warning is of evidentiary value in determining whether a valid consent was made. *Meeks*, 692 S.W.2d at 510. Here, it is undisputed that the *Miranda* warnings were given to appellant after the initial detention resulting in discovery of the heroin. Also, Officer Rodriguez did not ask appellant for his consent to search immediately after the initial detention. Nor did he make any show of force or any threat to coerce appellant into consenting. A request always implicates a choice and the right to refuse.

Under the totality of the circumstances, we find that appellant had a choice and did voluntarily consent to the search while he was justifiably being detained on reasonable suspicion; and thus, he is legally accountable for the fruits of the search. While his choice may not have been a wise one, the constitution does not legally shield individuals from the effects of unwise choices unless he or she is coerced. There is nothing in the record to indicate that appellant had a weak, or easily influenced, personality which would compel him to imagine coercion at every request. The only speculative factor in his favor is that one would not expect a reasonably prudent drug courier to consent to a search. But that speculation is not within our realm of review. The initial detention was not unconstitutional, and the subsequent consensual search of appellant's bag and person which led to the discovery of the heroin was proper under the circumstances. Thus, the trial court correctly overruled appellant's motion to suppress. We overrule appellant's sole point of error and affirm the judgment.