NO. 07-00-0019-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 5, 2001
_____

JAMES EDWARD HOSE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 292ND DISTRICT COURT OF DALLAS COUNTY;

NO.F98-69901-IV; HON. HENRY WADE, JR., PRESIDING
_____

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

James Edward Hose, appellant, appeals his conviction for theft of property. Through three points of error he challenges 1) the trial court's refusal to suppress evidence allegedly obtained from an impermissible detention and 2) the legal and factual sufficiency of the evidence underlying the jury's verdict. We overrule each point and affirm the judgment.

*Point One – Suppression of Evidence*

Appellant contends that the trial court should have suppressed evidence obtained by the police. This is allegedly so because "when the officer made contact with [him] there

was a 'stop' or temporary seizure for investigative detention," and the "initial detention" was not supported by "[]sufficient articulable facts." We disagree.

*Standard of Review*

The standard of review applicable to reviewing a court's refusal to grant a motion to suppress is one of abused discretion. *Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App.–Amarillo 1999, pet. ref'd). Rather than describe this well-established standard, we cite the parties to *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) for an explanation of same.

Similarly well-settled is the standard used in determining whether a police officer has reasonable suspicion to conduct a temporary detention. That standard was recently addressed in *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997), and we refer the litigants to that opinion for an explanation of same.[1]

*Application of Standard*

The officer who initially confronted appellant had been assigned to work, under cover, in a "crime prevention theft and burglary and robbery prevention detail around the parking lots that surround the State Fair" in Dallas. The day before actually confronting appellant, the officer had seen appellant and others cruising, at night, through the parking lots being patrolled. On the day of the confrontation, appellant was again seen at the parking lots. This time, however, he was first seen afoot "flagging" cars into a lot.[2] Then

---

[1]We do note, however, that the "as consistent with innocent activity as with criminal activity" construct repeatedly mentioned by appellant was rejected as a "viable test for determining reasonable suspicion" in *Woods*. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

[2]"Flagging" consists of waving an item (here, a red rag) to gain the attention of drivers and induce those drivers to park in the lot.

the officer, along with his colleague, saw appellant enter a vehicle with several other individuals, drive to another lot, exit the vehicle, and resume "flagging" cars. The other individuals with appellant also exited the car. But, rather than help with "flagging" down vehicles, they proceeded to look inside the cars that had parked there before their arrival.

At least one of the officers at the scene knew that a city permit was needed to park vehicles in these particular lots. So too did he know that no permits had been issued authorizing anyone to park cars in the first lot at which appellant was seen that day.

Having witnessed the foregoing events, the officers called for assistance and headed toward the lot wherein appellant was located. As they approached in their unmarked vehicle, appellant "flagged" them and asked for $5. At that point, the officers stopped the vehicle. One exited, flashed his police badge and asked to see appellant's identification and parking permit. In attempting to comply, appellant "produced from his pocket a stack of cards." Atop the stack was a credit card. The officer could see the face of the card and noted the name imprinted thereon was "Barbara." Upon "realiz[ing] that [appellant] didn't look like somebody named Barbara, . . . [he] asked if that was [appellant's] card." Appellant answered no and indicated that he obtained the item from someone else. Thereafter, appellant produced from his back pocket a checkbook also belonging to someone with the name "Barbara Frias."

The officer obtained the phone number of Ms. Frias from the checks and called same. During their conversation, Barbara Frias told the officer that her purse had been stolen the previous day and imparted to the officer a description of the person who had

taken it. Upon concluding that the description imparted generally matched the appearance of appellant, the latter was arrested.[3]

Police officers, like any one else, are free to approach individuals in a public place and ask questions, so long as the person is free to leave. *Barnes v. State*, 870 S.W.2d 74, 77 (Tex. Crim. App. 1993). They need neither probable cause nor reasonable suspicion to do so. Furthermore, identifying themselves as a peace officer (without more) does not convert the consensual encounter into a detention, *id.*, nor does simply asking the individual for identification. *Holladay v. State*, 805 S.W.2d 464, 471 (Tex. Crim. App. 1991). This is so because, as long as the encounter is consensual, the individual is free to respond, ignore the queries, or leave. Here, appellant was in a public place when one of the officers approached him, identified himself as a policeman, and asked appellant for identification and a parking permit. Nothing of record indicates that appellant could not have ignored the questions or left. Moreover, in responding to the questions asked of him, appellant disclosed the credit card and checkbook of Frias.

Given that appellant was standing in a public place, the officers did not need either probable cause or reasonable suspicion to approach him and ask questions. And, because nothing of record suggests that appellant was prevented from leaving or ignoring the officer's questions, we cannot say that "when the officer made contact with [him] there was a 'stop' or temporary seizure for investigative detention" which violated any statutory or constitutional prohibition. Accordingly, the trial court did not abuse its discretion in refusing to suppress any evidence.

---

[3]According to the arresting officer, appellant was arrested for driving from one lot to another without a seatbelt and for lacking a parking permit.

4

### *Point Two – Sufficiency of the Evidence*

Next appellant contends that the evidence is legally and factually insufficient to support his conviction. This is allegedly so because the State failed to present sufficient evidence establishing him as the one who committed the theft. We again disagree.

*Standard of Review*

The standard of review applicable to questions of legal and factual sufficiency are well-settled and need no explanation. We find it adequate to merely cite the parties to *King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

*Application of Standard*

Through an indictment, the State accused appellant of unlawfully, knowingly and intentionally exercising control over the purse and contents therein of Barbara Frias without Ms. Frias' consent and with the intent to deprive Ms. Frias of the property. In support of this allegation, we find the following evidence. First, when shown a photographic array of potential suspects, Ms. Frias selected appellant's picture. Second, she also stated, at trial, that appellant looked like the person who took her purse. Third, appellant possessed her credit card and checkbook a day after the theft. Fourth, both the credit card and checkbook were in her purse when it was taken. Combined, this constitutes some evidence upon which a rational jury could find beyond reasonable doubt that appellant committed the theft in question. And, while there may have been some discrepancies between appellant's visage and the description of the culprit initially given by Ms. Frias, that evidence merely created a fact issue for the jury to resolve. Neither it or any other

5

evidence rendered the verdict clearly wrong or manifestly unjust.  Accordingly, we find the evidence supporting the verdict both legally and factually sufficient.

Accordingly, the judgment is affirmed.

Brian Quinn
Justice

Do not publish.